83 F.3d 1197
 James RIDDLE, Lee Siemon, Bobby Trujillo, Jerry Walker,
Gerald Sostrich, Ernie E. Delgado, Plaintiffs-Appellants,
and
Juan Trevino, Kevin Yates, Adan Acosta, James W. Cotton,
Clint Cook, Cory D. Luman, Vernard Miles, Francisco Juarez,
Jody Morales, Michael Duran, Andrew Sisneros, Andre Boyer,
Gilbert Garcia, Leland Furbush, Joe Franco, Plaintiffs,
v.
Eloy MONDRAGON, Secretary New Mexico Department of
Corrections; Bruce King, Governor of the State of New
Mexico; Tom Udall, Attorney General, New Mexico; Donald A.
Dorsey, Warden, Southern New Mexico Correctional Facility,
Defendants-Appellees.
 No. 93-2225.
 United States Court of Appeals,
Tenth Circuit.
 April 29, 1996.
 
 Appeal from the United States District Court for the District of New Mexico (D.C. Nos. CIV-92-1363-HB, CIV-92-1405-HB, CIV-92-1411-HB, CIV-92-1429-HB, CIV-92-1432-HB, CIV-93-414-HB).
 Paul J. Kennedy, Albuquerque, New Mexico, for Plaintiffs-Appellants.*
 Nick D'Angelo, Santa Fe, New Mexico, and Garnett R. Burks, Jr., Las Cruces, New Mexico (Melinda L. Wolinsky, Deputy General Counsel, for New Mexico Corrections Department, Santa Fe, New Mexico, with them on the briefs), for Defendants-Appellees.
 Before EBEL and HOLLOWAY, Circuit Judges, and BROWN, District Judge.**
 HOLLOWAY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, who are convicted sex offenders and inmates in the Southern New Mexico Correctional Facility at Las Cruces, New Mexico, appeal the district court's dismissal of their civil rights claims brought under 42 U.S.C. § 1983 and based on alleged Eighth Amendment, due process, and equal protection violations. We affirm.
 
 
 2
 * Twenty-one plaintiffs filed virtually identical complaints alleging civil rights violations by state prison officials, judges, legislators, and other state officials. The district court consolidated all the actions and, thereafter, plaintiffs proceeded jointly. In addition to their complaints, plaintiffs filed a document styled as a brief in support of their civil rights claims. Plaintiffs also sought leave to file additional exhibits in support of their claims. The district court permitted these papers to be filed, but in its dispositive order found that the papers would not "facilitate the disposition of this action" and concluded that they would be excluded from consideration as provided by Fed.R.Civ.P. 12(b)(6).
 
 
 3
 The defendants filed motions to dismiss. The district court's Memorandum Opinion and Order of July 2, 1993, disposed of all the plaintiffs' claims, but only six of the twenty-one plaintiffs have appealed the dismissal. After pro se briefs had been received, we appointed counsel to represent the plaintiffs/appellants, ordered supplemental briefing, and heard oral argument.
 
 
 4
 In their respective complaints plaintiffs essentially alleged two sorts of Eighth Amendment claims. First, they averred that each of them as convicted sex offenders have been denied adequate treatment for their mental disorders related to their "addictive sexuality." E.g., I R., Tab 1, at 3. Second, plaintiffs alleged that defendant prison officials have failed to protect them from assault by fellow inmates. Plaintiffs' due process claims were based on various state statutes which, they contended, created a protected liberty interest in mental health treatment and rehabilitation. Finally, plaintiffs charged that both the legislative scheme pursuant to which they were sentenced and the policies of the department of corrections violated their equal protection rights. Plaintiffs sought monetary, injunctive, and declaratory relief.
 
 
 5
 The district court concluded that plaintiffs' claims for damages against state legislators and judges were legally frivolous, and therefore subject to dismissal pursuant to 28 U.S.C. § 1915(d). To the extent plaintiffs sought relief against defendants in their official capacities, the district judge determined the claims were barred by the Eleventh Amendment. The judge also held that plaintiffs' claims against the state judges for declaratory and injunctive relief were moot; these claims, the judge found, alleged that excessive sentences had been imposed, but under New Mexico law the sentencing judges had jurisdiction to modify the sentences only within a ninety day period after sentencing, which time had obviously elapsed. Finally, the court dismissed the remainder of plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.
 
 
 6
 Plaintiffs do not challenge the district court's dismissal of their claims for damages against the state judges and legislators, or their damage claims against the remaining defendants in their official capacities. Therefore, on appeal, we are concerned primarily with the district court's dismissal of plaintiffs' remaining claims pursuant to Rule 12(b)(6).
 
 
 7
 We review the dismissal of a complaint for failure to state a claim de novo. Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989). A district court should not dismiss a complaint pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir.1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." Hall, 935 F.2d at 1109. If the plaintiff proceeds pro se, the court should construe his pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers. Id. at 1110. However,
 
 
 8
 [t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. Not every fact must be described in specific detail, ... and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint, .... Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based ....
 
 
 9
 Id. at 1110 (citations omitted).
 
 II
 
 10
 We begin our examination with plaintiffs' claims that they are being denied necessary medical care in violation of their rights under the Eighth and Fourteenth Amendments. It is unclear whether plaintiffs invoked the Fourteenth Amendment because the Eighth Amendment applies to the states only through the Fourteenth Amendment or because they were attempting to allege violation of substantive due process rights. However, we have previously noted that where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process. Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir.1990) (citing Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989)). Accordingly, we will review plaintiffs' claims under the Eighth Amendment as made applicable to the states through the Fourteenth Amendment.
 
 
 11
 The states have a constitutional duty to provide necessary medical care to their inmates, including psychological or psychiatric care. Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). When prison officials are deliberately indifferent to an inmate's serious medical needs, they violate the inmate's right to be free from cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). "A medical need is serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " Ramos, 639 F.2d at 575 (quoting Laaman v. Helgemoe, 437 F.Supp. 269, 311 (D.N.H.1977)); see also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."). The Fourth Circuit has held that a prisoner
 
 
 12
 is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.
 
 
 13
 Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir.1977).
 
 
 14
 In their complaints, plaintiffs alleged that they each have a serious mental disorder--that they are "driven by sexually compulsive drives that are deviant." I R., Tab. 1, at 3. They further alleged that they have requested and have been denied treatment for their disorder. Plaintiffs alleged that defendants Dorsey and Mondragon do not recognize that sex offenders suffer from mental illness and refuse to comply with plaintiffs' repeated requests for treatment. Each plaintiff alleged that the available mental health treatment at the prison is inadequate to address his specific disorder and that the lack of treatment has caused him to suffer mental anguish. Specifically, each plaintiff alleged that his "addictive sexuality erodes his self-esteem to [the] point of apathy, reinforces fear and feelings of differentness, leading to apathy, and keeps him in the 'addictive cycle.' " E.g., I R., Tab 1, at 3.
 
 
 15
 In their brief in support of the complaints, plaintiffs cited medical journals for the proposition that sexual addiction is a chronic, clinically identifiable illness that can be treated. Plaintiffs also asserted that the only mental health treatment they have access to is a weekly group session, staffed by a psychologist, that is nothing more than a "bull" session and does not address their compulsive mental disorder. Their complaints have somewhat different allegations: that the "[c]ontracted staff psychiatrist only provides 5 hours per week at prison facility which is inadequate; only 5 psychologists on mental health staff at prison facility--all inadequate to treat Plaintiff and all others." I R., Tab 1, at 3-4. These allegations from the Riddle complaint are parallel to those of other plaintiffs.
 
 
 16
 After noting that an inmate has no constitutional right to the treatment of his or her choice, the district court held that here the plaintiffs' allegations failed to state a claim for deliberate indifference to their serious medical needs. The court reasoned that "plaintiffs do not allege that the defendants refused them all mental health treatment, but only specialized treatment targeted at their compulsive sexual disorders. Nor is there a serious medical need for the specialized treatment which they desire." Memorandum Opinion and Order at 13.
 
 
 17
 We conclude that even when plaintiffs' pro se complaints are liberally construed, they fail to state an Eighth Amendment claim in connection with the handling of their alleged "addictive sexuality." I R., Tab 1, at 3. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), laid down the controlling principles. The Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." Id. at 104, 97 S.Ct. at 291 (citation omitted). However, "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain,' or to be 'repugnant to the conscience of mankind.' " Id. at 105-06, 97 S.Ct. at 291-92. To state a cognizable Eighth Amendment claim of this type, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment ...." Id. at 106, 97 S.Ct. at 292 (footnote omitted). Conduct which, at most, is medical malpractice redressable in state court does not represent cruel and unusual punishment. Id. at 107, 97 S.Ct. at 292-93.
 
 
 18
 In Ramos v. Lamm, 639 F.2d 559 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), we applied the Eighth Amendment standards of Estelle in the medical treatment context. We upheld the findings and ruling below which afforded relief on the claim. Nevertheless, we pointed out the strict requirements of Estelle. The state has a constitutional obligation to provide medical care for those whom it is punishing by incarceration. This obligation requires the state to make available to inmates a level of medical care which is reasonably designed to meet the routine and emergency health care of inmates, including medical treatment for psychological or psychiatric care, inter alia. Id. at 574. However, "accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a mental condition do not constitute a medical wrong under the Eighth Amendment." Id. at 575. The two-prong Estelle standard " 'requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious ....' " Id. at 575 (quoting Laaman v. Helgemoe, 437 F.Supp. 269, 311 (D.N.H.1977)); see also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992).
 
 
 19
 Applying these standards to the mental illness claims made here under the Eighth Amendment, we hold that the plaintiffs' allegations are insufficient. While they have alleged that each has a mental disorder--sex addiction--the critical issue is whether they have adequately alleged that they suffer from a serious mental disorder. Each has alleged that he is driven by sexually compulsive drives that are deviant; and that his condition erodes his self-esteem to the point of apathy, reinforcing fear and feelings of differentness, inter alia. We feel that these averments do not meet the test of Estelle so as to demonstrate an Eighth Amendment violation. "[T]he mere fact that the plaintiffs are convicted sexual offenders does not mean that they have psychological disorders or that they are in need of psychiatric treatment." Patterson v. Webster, 760 F.Supp. 150, 154 (E.D.Mo.1991). There are no averments of diagnosis by a physician of a medical need mandating treatment, nor of a condition which a lay person would easily recognize as necessitating a doctor's attention. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' See Estelle v. Gamble, supra, 429 U.S. at 103-104 [97 S.Ct. at 290-91 ]." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). Vague allegations of eroded self-esteem, apathy, fear and feelings of differentness, keeping a plaintiff in the "addictive cycle," do not amount to the basis for a constitutional claim.
 
 
 20
 Moreover, we also conclude that plaintiffs' allegations are insufficient to satisfy the second prong of Estelle--that of deliberate indifference on the part of the defendants. Plaintiffs have asserted that the only mental health treatment they receive is access to a weekly group session, staffed by a psychologist. Nevertheless, we are not persuaded that the alleged lack of response to these symptoms constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle, 429 U.S. at 104, 97 S.Ct. at 291.
 
 
 21
 In sum, we are convinced that the deprivations as alleged by plaintiffs do not rise to the level of violations of the Eighth Amendment. Therefore we affirm the dismissal of these claims.
 
 III
 
 22
 Plaintiffs' other Eighth Amendment claims concern defendant prison officials' alleged failure to protect plaintiffs from assaults by other inmates. A prisoner has "a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates." Ramos, 639 F.2d at 572. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994)(quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Accordingly, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at ----, 114 S.Ct. at 1974.
 
 
 23
 An Eighth Amendment claim for failure to protect is comprised of two elements. First, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, --- U.S. at ----, 114 S.Ct. at 1977. Second, the inmate must establish that the prison official has a " 'sufficiently culpable state of mind,' " i.e., that he or she is deliberately indifferent to the inmate's health or safety. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991)). The prison official's state of mind is measured by a subjective, rather than an objective, standard. Farmer, --- U.S. at ----, 114 S.Ct. at 1977. In other words, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.
 
 
 24
 In explaining its holding in Farmer, the Court stated:Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," ... a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," .... For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm ....
 
 
 25
 The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." .... To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." .... In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety ....
 
 
 26
 --- U.S. at ----, 114 S.Ct. at 1977.
 
 
 27
 In these cases the plaintiffs make identical averments of the alleged Eighth Amendment violation by failure to protect their safety. They state:
 
 
 28
 Defendants MONDRAGON and DORSEY have failed in their obligation and responsibility to protect and preserve Plaintiff's safety and well-being. Plaintiff is exposed to adverse prison setting, constantly in fear of his life by physical assaults from other inmates who may discover his crime as sex offense at any time.
 
 
 29
 I R., Tab 1, at 6. These averments in the Riddle complaint also appear in those of the other five plaintiffs-appellants.
 
 
 30
 We hold that these allegations fail to state an Eighth Amendment claim for alleged failure to protect the plaintiffs' safety. It is true that one does not have to await the consummation of threatened injury to obtain preventive relief. Farmer v. Brennan, --- U.S. at ----, 114 S.Ct. at 1983. Nevertheless, as a first requirement, the deprivation alleged must be objectively sufficiently serious, as Farmer holds. Id. at ----, 114 S.Ct. at 1977. The allegations quoted above are the sum and substance of the claim of denial of protection, and they are merely conclusory allegations without supporting factual averments sufficient to state such a claim on which relief can be granted. Hall v. Bellmon, 935 F.2d at 1110.
 
 
 31
 Likewise, the second requirement for such a claim, as Farmer holds, --- U.S. at ----, 114 S.Ct. at 1977, is that the plaintiffs allege the unnecessary and wanton infliction of pain implicating the Eighth Amendment. As noted, to violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. Id. And that state of mind is one of "deliberate indifference" to inmate health or safety. Id. Even giving the complaints of the pro se plaintiffs a liberal construction, there simply is no allegation of deliberate indifference to the safety of the plaintiffs. As Farmer further stated with respect to this second requirement for such a claim,
 
 
 32
 [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
 
 
 33
 Id. at ----, 114 S.Ct. at 1979.
 
 
 34
 Returning to the first requirement--that the deprivation must be objectively sufficiently serious--Farmer, --- U.S. at ----, 114 S.Ct. at 1977, we note that the plaintiff's allegations must furnish more than a conclusory claim of being afraid and aggravated. See Street v. Fair, 918 F.2d 269, 272 (1st Cir.1990). There the plaintiff alleged a "campaign of violent intimidation" was being carried out by other inmates in connection with seating in the prison dining hall. The plaintiff alleged, inter alia, that many inmates had been seriously injured in the dining room; a friend had been stabbed repeatedly for refusing to move from a table; and the plaintiff was told on many occasions that he could not sit at a particular table and was once threatened with physical injury. The court held that the averments of cruel and unusual punishment fell well short of stating a claim on which relief could be granted.[3] Rejecting the plaintiff's arguments based on the allegations cited, the court held:
 
 
 35
 Yet plaintiff has made no allegation that he was physically attacked, nor is it clear from his present complaint that he was subjected to "constant threats" of violence. He cites only a single instance when he was threatened with physical harm--one which apparently passed without further incident. Plaintiff also complains in conclusory fashion of being "afraid" and "aggravated," but he has detailed no specific circumstances that would necessarily support a claim of mental suffering.
 
 
 36
 918 F.2d at 272 (emphasis added).
 
 
 37
 We are persuaded that the plaintiffs here have failed to state a claim under the Eighth Amendment because of the failure to aver a deprivation that is, objectively, sufficiently serious, and further the complaints fail to allege that the defendant officials had a sufficiently culpable state of mind which is one of "deliberate indifference" to inmate safety.
 
 IV
 
 38
 In their complaints, plaintiffs alleged that various state statutes and prison policies concerning mental health treatment and rehabilitation imbued them with protected liberty interests, of which defendant prison officials deprived plaintiffs without due process. We first consider the plaintiffs' claims with respect to the prison policies to which they refer.
 
 
 39
 In their complaints, plaintiffs identify in general terms several policies which they allege were established by defendants Dorsey and Mondragon. They allege that these policies "specifically disallow sex offenders (and Plaintiff[s] from participation: no 'minimum' custody status, no work release, no Community Corrections, purposeful classification in higher (medium) custody ...." I R., Tab 1, at 5. They also complain that specific treatment programs are provided for alcohol and substance abusers while the treatment afforded them is not specific for their needs.
 
 
 40
 Prison policies and regulations may create a protected liberty interest in limited circumstances. See Sandin v. Conner, --- U.S. ----, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The policies challenged here, however, do not include sex offenders, like plaintiffs, as beneficiaries of the policies and are challenged on that basis. We are satisfied that the mere failure to include the plaintiffs, as sex offenders, within these policies affords no basis for a due process claim. We, however, also consider the plaintiffs' challenge to these policies under the Equal Protection Clause, which is discussed infra, but proceed next to examine the plaintiffs' due process claims with respect to the state statutes on which they rely.
 
 
 41
 "[S]tate statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Vitek v. Jones, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). Among the statutes cited by plaintiffs are the Interstate Compact on Mentally Disordered Offenders, N.M.Stat.Ann. § 31-5-10 (Michie 1978), and a statute creating an "intake and classification" center within the Department of Corrections, § 31-20-2(C)(6), with power given the center to recommend to the secretary of corrections transfers to facilities including the forensic hospital. These statutes provide mechanisms by which the corrections officials can arrange to transfer inmates needing psychiatric care to an appropriate facility within the state or, pursuant to the Interstate Compact, in another cooperating state. Plainly, however, these provisions were not meant to create any rights enforceable by inmates against the state officials. Thus, the plaintiffs fail to show a liberty interest subject to due process protections.
 
 
 42
 Other statutes on which plaintiffs rely do not even apply to prisoners. None creates an unqualified right to treatment. We think it clear that no liberty interest has been created as claimed by plaintiffs. Because amendment could not cure these deficiencies in plaintiffs' allegations, the district court properly dismissed plaintiffs' procedural due process claims pursuant to Rule 12(b)(6) without leave to amend.
 
 V
 
 43
 Plaintiffs alleged that both the statutory scheme under which they were sentenced and the prison's regulations violated their right to equal protection in several respects. First, plaintiffs contended that all sex offenders in New Mexico are classified as "violent" offenders even if no physical violence is involved in the particular crime committed. Second, plaintiffs asserted that they are given longer sentences than other violent offenders. Plaintiffs contended both that the statutory scheme created longer sentences for sex offenders than for other violent offenders, such as those guilty of second degree murder, and that the state judges exercised their discretion under the statutory scheme to impose longer sentences on sex offenders. Third, plaintiffs alleged that the prison provides rehabilitation and treatment programs for inmates with substance abuse problems, but does not provide similar programs for sex offenders. Finally, plaintiffs asserted that due to their classification as violent offenders, they cannot qualify for various pre- and post-sentencing programs that are available to other criminal defendants.
 
 
 44
 "Unless it provokes strict judicial scrutiny, a state practice that distinguishes among classes of people will typically survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." Vasquez v. Cooper, 862 F.2d 250, 251-52 (10th Cir.1988). Strict judicial scrutiny is appropriate only when the classification involves a suspect class or interferes with a fundamental right. Id. at 252. Like the district court, we reject plaintiffs' contention that sex offenders constitute a suspect class. Cf. Lustgarden v. Gunter, 966 F.2d 552, 555 (10th Cir.) (noting that convicted sex offender challenging release statute was not member of suspect class), cert. denied, 506 U.S. 1008, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992). Likewise, plaintiffs have not alleged that they have been deprived of a fundamental right.
 
 
 45
 Therefore, the classifications plaintiffs challenge are subject to only a rational basis review, which is the lowest level of equal protection scrutiny. United States v. Phelps, 17 F.3d 1334, 1344 (10th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994). "Moreover, because legislation subject to rational basis review is presumptively constitutional, the burden is on the [plaintiffs] to establish that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate governmental interest." Id. at 1345 (citation omitted). Under this rational basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105 (1961).
 
 
 46
 Plaintiffs' allegations, if proven, fail to establish that either their placement in the class of "violent" offenders, their treatment within the class of violent offenders, or the difference in treatment of violent and non-violent offenders, is irrational or arbitrary and not in furtherance of a legitimate governmental interest. Further, the State and the district court have articulated a number of reasons why the classifications that plaintiffs challenge further New Mexico's legitimate penological goals, and we can articulate other reasons, as well. See Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 463-64, 108 S.Ct. 2481, 2490-91, 101 L.Ed.2d 399 (1988) (considering various rationales advanced by litigants and lower courts for challenged classification).
 
 
 47
 We are persuaded that permitting further amendment of plaintiffs' allegations on this claim would be futile and that the district court properly dismissed plaintiffs' equal protection claims on it. Having determined that plaintiffs failed to state such a claim of an equal protection violation, we need not decide whether the district court properly determined that plaintiffs' requests for injunctive relief against the state judicial defendants were moot.
 
 VI
 
 48
 Finally, we consider plaintiffs' contentions that the district judge abused his discretion in deciding the motions to dismiss without a hearing and in excluding from his consideration the evidentiary materials plaintiffs had submitted. We find no abuse of discretion in such procedure. The district courts are authorized by Fed.R.Civ.P. 78 to provide by local rule for disposition of most motions without oral argument, and such a local rule is in force in the District of New Mexico, D.N.M.Civ.Rule 7.9. The decision to exclude plaintiffs' evidentiary materials was authorized by Fed.R.Civ.P. 12(b)(6). Out of an abundance of caution, however, we have reviewed the evidentiary materials and concluded that their consideration by the district court would not have affected the disposition of this matter.
 
 
 49
 AFFIRMED.
 
 
 
 *
 Mr. Kennedy was appointed by the court to represent the Plaintiffs-Appellants and filed a supplemental brief, in addition to pro se briefs of Plaintiffs-Appellants, and argued the cause for Plaintiffs-Appellants
 
 
 **
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [3]
 In spite of its holdings regarding the insufficiency of plaintiff's complaint in Street, the court held that the allegations were sufficient to withstand sua sponte dismissal for frivolousness under 28 U.S.C. § 1915(d) and that the district court had erred in dismissing under Rule 12(b)(6) without affording the inmate notice and an opportunity to be heard. 918 F.2d at 271-72. These considerations are not pertinent to the district court's treatment of the plaintiffs' claims in this matter where the Eighth Amendment failure to protect claim was not dismissed sua sponte and plaintiffs were given notice of the motion to dismiss and an opportunity to file a response