**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 20, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LESLIE POTTER,

    Plaintiff - Appellant,

v.

KURT JOHNSON, M.D.; CHS TX, INC.,
d/b/a YesCare,

    Defendants - Appellees.

No. 25-8033
(D.C. No. 1:23-CV-00246-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **FEDERICO**, Circuit Judges.
_____

Plaintiff-Appellant Leslie Potter, a Wyoming state prisoner, brings a pro se

civil rights appeal from the district court. There, Mr. Potter brought claims under 42

U.S.C. § 1983 alleging that the defendant doctor and health care organization

violated his Eighth Amendment rights by acting with deliberate indifference to his

need for corrective surgery. On appeal, Mr. Potter challenges the district court's

grant of summary judgment in favor of the defendants on his § 1983 claims.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

We have jurisdiction under 28 U.S.C. § 1291. Reviewing Mr. Potter's filings liberally,[1] we conclude that the evidence in the record does not present a material factual dispute preventing summary judgment. The defendants are entitled to judgment as a matter of law.

We therefore **AFFIRM** the district court's grant of summary judgment.

## I.    Background

Mr. Potter is a state prisoner serving a life sentence in Wyoming. Defendant CHS TX, Inc. d/b/a YesCare (YesCare) contracts with the State of Wyoming to provide medical care to state prisoners. Defendant Kurt Johnson was the Regional Medical Director for YesCare during all relevant times.

In December of 2023, Mr. Potter filed suit against Dr. Johnson and YesCare. Mr. Potter alleged that beginning in 2021, Dr. Johnson knew that Mr. Potter was suffering adverse effects from the mesh of a hernia repair on his right side, including an infection caused by the mesh. Mr. Potter alleged that despite this knowledge, Dr. Johnson "chose to ignore it and merely used antibiotics in an attempt to avoid the necessary surgery." R. Vol. I. at 26. He contended that Dr. Johnson violated the Eighth Amendment because he acted with deliberate indifference to delay the surgery from August of 2021 until May of 2022.[2] Mr. Potter also alleged that YesCare

---

[1] Because Mr. Potter is proceeding pro se, we review his pleadings and filings liberally. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 815 (10th Cir. 2007).

[2] Mr. Potter initially stated that this suit was based on Defendants' misconduct beginning in March of 2021, though he later backtracked in a discovery response

violated the Eighth Amendment because Dr. Johnson delayed his surgery to remove

Mr. Potter's infected mesh "[p]ursuant to [YesCare's] policy, practice, or custom" to

deny or delay surgeries for prisoners. *Id.*

Dr. Johnson and YesCare moved for summary judgment, and the district court

granted summary judgment against Mr. Potter on both claims. It granted summary

judgment in favor of Dr. Johnson because Mr. Potter did not identify facts

demonstrating the required subjective element of Dr. Johnson's deliberate

indifference. Likewise, the court granted summary judgment in favor of YesCare

because there was no predicate constitutional violation on the part of Dr. Johnson to

attribute to YesCare's policies.

Mr. Potter timely filed a notice of appeal challenging the court's grant of

summary judgment.

## II.    Discussion

Deliberate indifference to a prisoner's serious medical needs constitutes cruel

and unusual punishment in violation of the Eighth Amendment and is actionable

under 42 U.S.C. § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). Mr. Potter,

however, has failed to demonstrate a disputed fact material to his claim or that Dr.

Johnson and YesCare acted with deliberate indifference. We discuss the relevant law

and record evidence below.

---

from alleging March misconduct. Mr. Potter's next complaint about Dr. Johnson
appears in August, so like the district court, we begin our analysis there.

### A.    Standard of Review

We review a district court's grant of summary judgment de novo.  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1116 (10th Cir.2013), *rev'd on other grounds*, 575 U.S. 768 (2015).  "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (citation modified).  To assess a motion for summary judgment, "[w]e view the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party."  *Id.*

The party seeking summary judgment may either "produc[e] affirmative evidence negating an essential element of the non-moving party's claim, or . . . show[] that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (quoting *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2002)).  If the moving party negates an essential element, the non-moving party may not rely on "[u]nsubstantiated allegations," but instead must "go beyond the pleadings and designate specific facts" that demonstrate the presence of a genuine dispute of material fact.  *Estate of Hurtado ex. rel. Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (first quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); and then quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted)).

### B.    Eighth Amendment Claims of Deliberate Indifference

Mr. Potter challenges the district court's grant of summary judgment on his § 1983 claims premised on Dr. Johnson and YesCare's alleged Eighth Amendment violations.  We address each claim in turn.

### 1.    Claim Against Dr. Johnson

Mr. Potter alleges that Dr. Johnson was deliberately indifferent to Mr. Potter's medical needs in violation of the Eighth Amendment by delaying his mesh repair surgery for over a year.

An Eighth Amendment deliberate indifference claim has an objective component and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The objective component requires the inmate to prove that his alleged deprivation of care was "sufficiently serious."  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citation modified).

The subjective component requires the inmate to show that the prison official acted with a state of mind of "deliberate indifference to inmate health or safety."  *Farmer,* 511 U.S. at 834 (citation modified).  A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Id.* at 837. In other words, the inmate must prove that the "official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect," however, "where a doctor merely exercises his considered medical judgment." *Self*, 439 F.3d at 1232.

In 2012, Mr. Potter underwent surgery to repair bilateral inguinal hernias—hernias located in the groin area on both sides of the body. The surgery implanted synthetic mesh to prevent the hernias' recurrence. In August of 2021, Dr. Johnson saw Mr. Potter regarding pain he reported around his right-side hernia repair that he believed to be "caused by the mesh used for the repair." R. Vol. I. at 185. Upon examination, Dr. Johnson found no hernia and noted "right groin pain possibly from mesh/scar tissue that resulted from repair." R. Vol. II. at 39. A medical expert testified that, upon reviewing the medical record in this case, "[t]here was no clinical indication for any further intervention at this time." R. Vol. I. at 68–69. Mr. Potter did not contest this testimony. In other words, Dr. Johnson could not be deliberately indifferent to a substantial risk of harm to Mr. Potter—no substantial risk existed at that time.

In September of 2021, Dr. Johnson treated Mr. Potter with a lidocaine and Kenalog injection and noted that he would refer him to a general surgeon if Mr. Potter did not improve with the injection. Dr. Johnson testified that he saw no indication that Mr. Potter was suffering from an infection caused by defective mesh, but instead believed he was suffering from chronic groin pain. A medical doctor

testified that Dr. Johnson's injection was within the accepted standard of care to reduce chronic pain after inguinal hernia surgery. *Id.* at 69. This testimonial evidence was not contested and shows that Dr. Johnson did not act negligently, let alone with deliberate indifference.

In November of 2021, Mr. Potter was seen for a sore on his right groin, and Nurse Practitioner Rutz put him on a topical antibiotic and referred him to a provider. Again, uncontested record testimony stated that this treatment met the standard of care because the wound appeared to be superficial, indicating that there was no need for an urgent referral or other measures. *Id.* NP Rutz did not act negligently, nor with deliberate indifference. As a result, even assuming Dr. Johnson knew and oversaw this medical decision, deliberate indifference from Dr. Johnson cannot be inferred based on his medical staff's care.

In December of 2021, Mr. Potter was seen again by NP Rutz for the sore and placed on oral antibiotics to avoid further irritation. Uncontroverted record testimony stated that this course of treatment met the standard of care because it advanced Mr. Potter's treatment from topical to oral antibiotics, and no symptoms had emerged meriting further intervention. *Id.* at 70. Again, a reasonable juror could not infer negligence on the part of NP Rutz or Dr. Johnson, let alone deliberate indifference.

In January of 2022, Mr. Potter's sore had re-opened, and NP Rutz once again put him on oral antibiotics. Uncontroverted testimony stated that this met the standard of care because Mr. Potter's sore had healed on the first round of oral

antibiotics, so another course was reasonable to try. *Id.* Again, neither negligence nor deliberate indifference can be inferred on the part of NP Rutz or Dr. Johnson.

In February, NP Rutz scheduled Mr. Potter for a general surgery consult because the sore remained open or had re-opened. Uncontested testimony stated that this course of action met the standard of care because Mr. Potter did not have signs of a severe illness meriting emergency treatment. *Id*. at 71. Again, neither negligence nor deliberate indifference can be inferred.

In March, general surgeon Dr. Fortier examined Mr. Potter and found that his sore was healed but noted that exploratory surgery to remove the mesh would be appropriate if the wound re-opened.

In April, NP Rutz saw that the sore had re-opened and sent Mr. Potter to the general surgeon for surgery.

In May of 2022, Mr. Potter underwent surgery that removed the infected mesh.

The record from August of 2021 until Mr. Potter's surgery in May of 2022 does not permit the inference that Dr. Johnson acted with deliberate indifference in his own care of Mr. Potter nor by overseeing other practitioners' care of Mr. Potter, to the extent he oversaw that care. When confronted with Mr. Potter's pain, Dr. Johnson treated it in the regular course. When staff member NP Rutz was confronted with Mr. Potter's infection, he treated it in the regular course. And when general surgeon Dr. Fortier was confronted with the Mr. Potter's re-emerging infection, he performed surgery to remove the infected mesh. At no point did Dr. Johnson, nor other medical practitioners, act with deliberate indifference by knowingly

8

disregarding a substantial risk of harm to Mr. Potter.  Dr. Johnson, his medical staff, and the general surgeon ratcheted up treatment appropriately according to the accepted standard of care.  *See Self*, 439 F.3d at 1232–33 ("[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law.").

In sum, Mr. Potter does not identify specific facts in his pleadings or briefing that create a genuine dispute of material fact regarding the subjective element of Dr. Johnson's deliberate indifference.  As a result, no reasonable jury could find that Dr. Johnson treated Mr. Potter with deliberate indifference in violation of the Eighth Amendment.  We affirm the district court's grant of summary judgment in favor of Dr. Johnson.

### 2.    *Claim Against YesCare*

Mr. Potter similarly alleges that YesCare is liable for Dr. Johnson's unconstitutional delay of his mesh repair surgery because Dr. Johnson's delay was motivated by YesCare's policy, practice, or custom of delaying prisoners' surgeries.

A plaintiff may bring a *Monell*[3] claim under § 1983 against a governing body or a private entity acting under color of state law for constitutional violations committed by an official of the body or entity pursuant to its policy, practice, or custom.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).  To

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

establish *Monell* liability, a plaintiff must show: (1) the existence of an official policy or custom (2) that directly caused the alleged constitutional violation. *Id.* at 1215. A governing body or entity cannot be held liable under *Monell* if the charged official "did not commit a constitutional violation." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020) (quoting *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155–56 (10th Cir. 2001)).

Because no reasonable juror could find that Dr. Johnson committed the predicate constitutional violation on the present record, no reasonable juror could find YesCare liable under *Monell*. "[T]here is no question that where the actions of a municipality's officers do not rise to the level of a constitutional violation and the claim against the municipality is based on it serving as the driving force behind those actions, liability cannot lie." *Crowson,* 983 F.3d at 1191. Mr. Potter does not present a predicate constitutional violation to ascribe to YesCare—liability cannot lie.

## III.   Conclusion

For the reasons stated above, we affirm the district court's grant of summary judgment.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge